United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

HOMELAND INSURANCE COMPANY OF NEW YORK,

Plaintiffs,

v.

SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH, et al.,

Defendants.

Case No. 25-cv-06266-LB

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING BELTRAN'S MOTION TO DISMISS HIM AS A PARTY**

Re: ECF Nos. 93–94

## INTRODUCTION

This is a statutory interpleader action about entitlement to a $1 million Accident Medical Expense (AME) Benefit under an occupational-accident policy that Homeland Insurance Company of New York issued to Uber Technologies, Inc. The insured, David Centeno Beltran, was injured in a hit-and-run accident on February 20, 2023, while making a delivery for Uber. He remains incapacitated. Homeland deposited the funds with the court and was discharged. Three parties assert claims to the fund. The California Department of Health Care Services (DHCS) administers Medi-Cal and has paid $639,404.64 for his care. The City and County of San Francisco (CCSF) treated him at Zuckerberg San Francisco General Hospital and Laguna Honda Hospital and has about $3.4 million in unpaid charges. UnitedHealthcare of Florida, Inc. was his private health insurer until October 31, 2023, paid about $2.4 million for his care during that period, and contends that its plan excluded the services that Proposition 22 required Homeland to

cover.[1]

DHCS moves for summary judgment that it has a statutory right of first priority to the fund and is entitled to $639,404.64. Mr. Centeno Beltran, through his guardian ad litem Yoel Centeno, moves under Rule 21 to be dropped as a party because he claims nothing from the fund.[2]

The court denies DHCS's motion. The Medi-Cal third-party-liability statutes, Cal. Welf. & Inst. Code § 14124.70 et seq., are the source of the "first lien" DHCS invokes, and they reach tortfeasors and their statutory stand-ins, not a first-party contractual medical-expense benefit. The statute that does reach the AME Benefit, § 14024, gives DHCS the right to recover from Homeland "the amount which would have been paid" under the policy for the services that Medi-Cal paid for. That is a measure of Homeland's contractual obligation, not a rule of priority among claimants to a limited fund. The record, which DHCS does not controvert, shows that charges for covered services consumed the $1 million limit no later than early 2024, before DHCS made all but a small fraction of its payments, and most of its payments were for care after the policy's 104-week benefit period ended. DHCS has not shown what, if anything, Homeland would have owed for the services it paid for.

The court grants Mr. Centeno Beltran's motion. He disclaims any claim to the interpleaded fund, he is no longer an adverse claimant, and DHCS's duty-to-cooperate argument does not require that he remain a party. He is dropped without prejudice to his rights outside the fund.

## STATEMENT

### 1. The Accident, the Homeland Policy, and the Payors

Mr. Centeno Beltran was injured on February 20, 2023. He was hospitalized at Zuckerberg San Francisco General Hospital, which CCSF operates, from that day until September 4, 2024, when he was transferred to Laguna Honda Hospital and Rehabilitation Center, another CCSF

---

[1] Compl. – ECF No. 1; First Am. Compl. (FAC) – ECF No. 42 at 2–5; Receipt – ECF No. 77; Order Discharging Stakeholder – ECF No. 76. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 94; Centeno Beltran Mot. – ECF No. 93.



United States District Court
Northern District of California

United States District Court
Northern District of California

facility, where he remains. He is expected to need care for life.[3]

Uber held a Blanket Occupational Accident Policy with Homeland. The policy is the coverage that Proposition 22 requires network companies to carry for app-based drivers, which must include "[c]overage for medical expenses incurred, up to at least one million dollars." Cal. Bus. & Prof. Code § 7455(a)(1).[4] The first page of the policy states, in capital letters, that it "is not a workers compensation policy and is not a substitute for workers compensation coverage."[5] Under the AME Benefit, Homeland "will pay the Usual and Customary Charges incurred for Medically Necessary Covered Accident Medical Services received due to [an] Injury, up to the Maximum Benefit Amount and Maximum Benefit Period shown on the Declarations, per Insured Person, for all Injuries caused by a single Covered Accident."[6] The Declarations set the Maximum Benefit Amount at $1 million per accident (and as a lifetime maximum) and the Maximum Benefit Period at 104 weeks.[7] The Maximum Benefit Amount is "the maximum benefits payable for Medically Necessary Covered Accident Medical Services received due to an Insured Person's Covered Injury caused by a single Covered Accident." The Maximum Benefit Period is "the maximum period for which benefits will be payable for Covered Accident Medical Services" and "starts from the date of the Accident."[8] One hundred and four weeks from February 20, 2023, is February 17, 2025. The benefit excludes, among other things, "services or treatment which are covered under any other insurance of any kind except for any automobile or no-fault coverage provided by the Policyholder," services "provided for in a settlement or court judgment," and services "for which an Insured Person is not legally obligated to pay."[9] Homeland pays the AME Benefit "to the party

---

[3] FAC – ECF No. 42 at 3 (¶¶ 8–9); Levin-Gesundheit Decl. – ECF No. 99 at 2 (¶ 3); Smith Decl. – ECF No. 94-3 at 5 (¶ 19).

[4] Homeland Policy, Ex. 1 to Galán Decl. – ECF No. 94-2 at 21 (¶ 30, DHCS-000067) (defining "Proposition 22 Benefits").

[5] *Id.* at 3 (DHCS-000049).

[6] *Id.* at 9 (DHCS-000055).

[7] *Id.* at 33 (DHCS-000079).

[8] *Id.* at 11 (DHCS-000057).

[9] *Id.* at 10 (DHCS-000056).

who furnished the service unless [it] receive[s] written notice from the Insured Person to change the payment."[10]

Mr. Centeno Beltran had an individual health-insurance policy with UnitedHealthcare that ran through October 31, 2023.[11] That plan excludes "[h]ealth care services for which other coverage is required by federal, state or local law to be bought or provided through other arrangements."[12] UnitedHealthcare says that it paid $2,452,798.52 for his care through October 31, 2023, including $2,431,081.72 to Zuckerberg San Francisco General Hospital, which billed $4,766,978.89 for that admission.[13]

CCSF did not bill Medi-Cal while UnitedHealthcare covered Mr. Centeno Beltran. After that coverage lapsed, CCSF billed Medi-Cal. Then, after learning of the AME Benefit, it refunded the Medi-Cal payments for the period from November 1, 2023, through his discharge from Zuckerberg San Francisco General Hospital on September 4, 2024. For that period, CCSF has $3,437,575.53 in uncompensated charges, of which $1,003,651.54 was incurred between November 1, 2023, and February 10, 2024.[14]

**2. DHCS's Payments and Claim**

Mr. Centeno Beltran enrolled in Medi-Cal in February 2023. DHCS's records reflect that, from then through October 8, 2026, Medi-Cal paid $639,404.64 for injury-related care, and it continues to pay for care.[15] DHCS does not allocate its payments by date of service. CCSF

---

[10] *Id.* at 16 (DHCS-000062).

[11] Kolb Decl. – ECF No. 101-1 at 2 (¶ 5); Levin-Gesundheit Decl. – ECF No. 99 at 2 (¶ 2).

[12] UnitedHealthcare Policy, Ex. A to Kolb Decl. – ECF No. 101-1 at 78 (§ 2(O)(1)).

[13] UnitedHealthcare Opp'n – ECF No. 101 at 8, 18. The brief cites a "UHCF Medical Payment Summary (UHCF0124)" for these figures. The only document in the record bearing that production number is the last page of the UnitedHealthcare policy, Ex. A to Kolb Decl. – ECF No. 101-1 at 127, and the record contains no payment summary. The figures are UnitedHealthcare's assertions. The court recites them for context and does not rely on them.

[14] CCSF Opp'n – ECF No. 98 at 4 & n.1 (citing Cal. Welf. & Inst. Code § 14019.3(d)); Levin-Gesundheit Decl. – ECF No. 99 at 2–3 (¶ 4(a)–(b)).

[15] Smith Decl. – ECF No. 94-3 at 3, 5 (¶¶ 8, 18–19). DHCS's notices to Mr. Centeno Beltran's counsel reported different figures over time: a lien of $575,132.23 in August and December 2024, an estimate



United States District Court
Northern District of California

calculated amounts from the parties' billing productions: (1) $13,143.84 from February 20 through October 31, 2023 (while UnitedHealthcare coverage was in force, apparently to the University of California, San Francisco); (2) $486.14 from November 1, 2023, through February 10, 2024 (to providers other than CCSF); (3) $3,148.93 from February 11 through September 4, 2024 (to providers other than CCSF); (4) $126,526.10 from September 5, 2024, through February 17, 2025; and (5) $496,099.63 from February 18, 2025, forward.[16] DHCS objects to these figures as hearsay but does not dispute them. In its reply, it calculates that it paid "approximately $149,923.86" through February 20, 2025.[17]

DHCS has received no payment toward the Medi-Cal expenditures. It seeks a judgment declaring that it is entitled to "first priority reimbursement" of $639,404.64 from the fund or, alternatively, partial summary judgment that it has a right of recovery from the fund with priority over CCSF and UnitedHealthcare.[18]

### 3. Procedural History

Homeland filed this action under 28 U.S.C. § 1335 on July 25, 2025, naming DHCS, CCSF, UnitedHealthcare, and Mr. Centeno Beltran. Each had asked it for payment. It deposited $1 million with the court and was discharged on April 24, 2026.[19] Mr. Centeno Beltran's counsel has since represented that he is not pursuing a claim to the fund.[20] The parties identified as a discrete legal issue "whether the Department is entitled to any funds from the Homeland Insurance $1,000,000 Medical Expense Reimbursement Benefit when CCSF and United Healthcare incurred

---

of $266,130.09 in October 2025, and an estimate of $535,860.71 (with an itemization through April 2026) in May 2026. *Id.* at 3–5 (¶¶ 10–11, 15–16); Ex. 10 to *id.* – ECF No. 94-4 at 62–98. The itemization is marked "not the final lien amount." *Id.* at 98 (DHCS-000133). The decline between 2024 and 2025 is consistent with CCSF's refund of the Medi-Cal payments for the Zuckerberg period.

[16] Levin-Gesundheit Decl. – ECF No. 99 at 3 (¶ 4(c)–(g)).

[17] Reply – ECF No. 103 at 11–13 & n.3.

[18] Smith Decl. – ECF No. 94-3 at 5 (¶ 20); Mot. – ECF No. 94 at 9, 30; Reply – ECF No. 103 at 19.

[19] Compl. – ECF No. 1; FAC – ECF No. 42 at 4 (¶¶ 14–17); Receipt – ECF No. 77; Order – ECF No. 76.

[20] Winter Decl. – ECF No. 90 at 2 (¶ 3).

medical expenses far in excess of $1,000,000 prior to Medicaid covering any care." The court set a schedule for an early motion on it and for a motion addressing Mr. Centeno Beltran's status.[21] DHCS filed its motion, and Mr. Centeno Beltran filed his, on October 8, 2026. CCSF and UnitedHealthcare oppose DHCS's motion, and DHCS opposes Mr. Centeno Beltran's (until the court decides its motion).[22]

## STATUTORY SCHEME AND LEGAL STANDARDS

### 1. Medi-Cal Recovery from Third Parties and Other Coverage

Medicaid is the "payor of last resort." *Kain v. Dep't of Health Servs.*, 91 Cal. App. 4th 325, 328–29 (2001) (cleaned up). As a condition of federal funding, a state must "take all reasonable measures to ascertain the legal liability of third parties," meaning those "legally responsible for payment of a claim for a health care item or service" by "statute, contract, or agreement," and, where liability "is found to exist after medical assistance has been made available," must "seek reimbursement for such assistance to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(A)–(B); *Gallardo v. Marstiller*, 596 U.S. 420, 425 (2022). The state must require beneficiaries to assign to it "any rights . . . to payment for medical care from any third party," 42 U.S.C. § 1396k(a)(1)(A), and when it pays for care, it "is considered to have acquired the rights of such individual to payment by any other party for such health care items or services," *id.* § 1396a(a)(25)(H). A "third party" is "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan." 42 C.F.R. § 433.136.

California implements these requirements through two sets of provisions, which treat "third party liability" and "other coverage" as "separate and distinct." *Palumbo v. Myers*, 149 Cal. App. 3d 1020, 1029–32 (1983).

---

[21] Joint Case Management Statements – ECF Nos. 87, 91 at 3–5 (¶¶ 7, 12); Orders – ECF Nos. 89, 96.

[22] The court can decide the motions without oral argument. Civil L.R. 7-1(b). The parties consented to magistrate-judge jurisdiction. Consents – ECF Nos. 11, 16, 21, 24, 34; 28 U.S.C. § 636(c)(1).

United States District Court
Northern District of California

**1.1 Third-Party Liability Under Section 14124.70 et seq.**

"When benefits are provided or will be provided to a beneficiary under this chapter because of an injury for which another party is liable, or for which a carrier is liable in accordance with the provisions of any policy of insurance issued pursuant to Section 11580.2 of the Insurance Code, the director shall have a right to recover from such a party or carrier the reasonable value of benefits so provided." Cal. Welf. & Inst. Code § 14124.71(a). Insurance Code § 11580.2 governs uninsured- and underinsured-motorist coverage, and the article defines "carrier" by reference to insurers authorized "to insure persons against liability for injuries caused to another" and insurers providing uninsured-motorist coverage. Cal. Welf. & Inst. Code § 14124.70(a). The director may sue the liable party directly or join the beneficiary's action. *Id.* §§ 14124.71(a), 14124.73(a). The director's "lien" is "the director's claim for recovery, from a beneficiary's tort action or claim, of the reasonable value of benefits provided on behalf of the beneficiary." *Id.* § 14124.70(d). When the beneficiary prosecutes the action or claim alone, the court must, after litigation expenses and attorney's fees, "allow as a first lien against the amount of the settlement, judgment, or award" the director's recovery, "and as a second lien, the amount of any claims, pursuant to Section 14019.3, owed to a provider." *Id.* § 14124.74(a); *see id.* § 14124.74(b) (same order of payment when the director joins the action). Courts have applied these provisions to no-fault programs that substitute for tort liability: the National Vaccine Injury Compensation Program, which "offers a no-fault substitute for tort recovery against vaccine manufacturers who, if held liable in a civil case, clearly would qualify as 'third parties,'" *Kain*, 91 Cal. App. 4th at 329, and workers' compensation, which "offers a no-fault substitute for tort liability of the employer who, if held liable in a civil action, clearly would qualify as a third party tortfeasor," *Boehm & Assocs. v. Workers' Comp. Appeals Bd.*, 108 Cal. App. 4th 137, 147 (2003).

**1.2 Other Coverage Under Section 14024 and the Assignment Statutes**

Section 14024 addresses beneficiaries who have another source of payment for the same care. "When health care services are provided to a person under this chapter who at the time the service is provided has any other contractual or legal entitlement to such services, the director shall have the right to recover from the person, corporation, or partnership who owes such entitlement, the

United States District Court
Northern District of California

amount which would have been paid to the person entitled thereto, or to a third party in his behalf, or the value of the service actually provided, if the person entitled thereto was entitled to services." Cal. Welf. & Inst. Code § 14024. The section continues:

> To the extent permitted by federal law and subject to the director's prior right to recover upon any contractual or legal entitlement or other third-party liability for the cost incurred in rendering care, the provider of services shall remain entitled to recover remaining unpaid charges to the extent that any third party is obligated to pay the charges by reason of the beneficiary's other contractual entitlement. Any claim shall not be permitted to the extent that the claim would reduce the director's right to recover pursuant to Section 14124.78.

*Id.* The phrase "the amount which would have been paid" "makes sense only if [the section] speaks to other insurance coverage or health care programs," and the section is addressed to a "preexisting entitlement," coverage in place when the services are rendered, not a recovery that arises later. *Palumbo*, 149 Cal. App. 3d at 1032.

Related provisions make the transfer of the beneficiary's rights automatic. A Medi-Cal applicant "irrevocabl[y] assign[s]" to the director "the benefits of any contractual or legal entitlement for health care," Cal. Welf. & Inst. Code § 14023(d), and a beneficiary assigns "by operation of law" his "rights to payments for medical care from a third party," *id.* § 14008.6(a)(1). An entity "legally or contractually obligated to pay claims for health care items or services" must "[a]ccept the state's right of recovery and the assignment to the state of any right of an individual or other entity to payment" for items or services the department covers, *id.* § 10022(b)(1), and every private health-care-coverage contract "is deemed to provide for payment to the department for the actual cost . . . to the extent of the benefits provided under the terms of the policy for the items provided or services rendered," *id.* § 10024 (cleaned up).

**2. Interpleader**

A stakeholder holding a fund of $500 or more that two or more adverse claimants "are claiming or may claim" may interplead it. 28 U.S.C. § 1335(a). In the first stage, the court determines that a single fund and adverse claimants exist. In the second, it determines "the respective rights of the claimants." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir.

2012) (cleaned up). The second stage may be decided on summary judgment under the substantive law of the forum state. *Equitable Life Assurance Soc'y of U.S. v. McKay*, 837 F.2d 904, 905 (9th Cir. 1988). A claim to the fund need only be "colorable." *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 894–95 (9th Cir. 2012). The court "must normally determine the priority of claims . . . as they existed at the time the action was initiated." *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir. 1997).

**3. Summary Judgment**

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of identifying the portions of the record that demonstrate the absence of a triable issue. *Celotex*, 477 U.S. at 323. When the movant bears the burden of proof at trial, it must affirmatively show the absence of a genuine dispute on each element of its claim with evidence that would entitle it to a directed verdict if uncontroverted. *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the movant meets its burden, the nonmovant must produce evidence showing a genuine dispute for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). The court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party may object that material cited to support or dispute a fact "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The question is the admissibility of the contents, not the form of the submission. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).

**4. Rule 21**

"On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). Interpleader

United States District Court
Northern District of California

requires adverse claimants to the stake. *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 507–08 (9th Cir. 1979). In deciding whether a party is dispensable, courts consider the Rule 19(b) factors: prejudice to the absent party or the existing parties, whether the judgment can be shaped to lessen it, and whether a judgment in the party's absence would be adequate. *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 276 n.6 (9th Cir. 1980).

## ANALYSIS

### 1. DHCS's Motion

DHCS's claim to the fund rests on three theories: (1) a direct right of recovery and a first lien under the third-party-liability statutes; (2) a right of recovery and a "prior right" under § 14024; and (3) the statutory assignment of Mr. Centeno Beltran's rights to UnitedHealthcare by §§ 10022 and 10024. The first does not apply. The second applies but measures DHCS's recovery by what Homeland owed under the policy for the services Medi-Cal paid for, and it does not give DHCS priority over claims for other services. The third adds nothing because an assignee takes only what the assignor had.

#### 1.1 The Third-Party-Liability Statutes Do Not Reach the AME Benefit

The direct-action statute applies when Medi-Cal pays for care "because of an injury for which another party is liable" or for which a carrier is liable under an uninsured-motorist policy. Cal. Welf. & Inst. Code § 14124.71(a). Homeland is neither. It is not liable for the injury: no one contends that Homeland or Uber caused the accident. It is liable, by contract, for a defined schedule of medical-expense benefits. And the Homeland policy is a surplus-lines occupational-accident policy, not a policy "issued pursuant to Section 11580.2 of the Insurance Code," and Homeland is not a "carrier" as the article defines the term.[23]

*Kain* and *Boehm* do not extend the statute to the AME Benefit. Both held that a no-fault program qualifies as a "third party" because it substitutes for the tort liability of someone who

[23] Homeland Policy, Ex. 1 to Galán Decl. – ECF No. 94-2 at 3, 35–36 (DHCS-000049, -000081–82); Cal. Welf. & Inst. Code § 14124.70(a). DHCS acknowledges that § 11580.2 governs uninsured-motorist coverage. Mot. – ECF No. 94 at 21.

would otherwise be a third party: the vaccine manufacturer in *Kain*, the employer in *Boehm*. *Kain*, 91 Cal. App. 4th at 329; *Boehm*, 108 Cal. App. 4th at 147. The phrase "financially responsible," relied on by DHCS, describes that substitution. The Homeland policy is the opposite of a substitute for tort liability. It disclaims workers-compensation status, excludes injuries for which the insured is entitled to workers-compensation benefits, excludes services "provided for in a settlement or court judgment," and leaves Mr. Centeno Beltran's tort remedies intact.[24] That Proposition 22 required Uber to buy the coverage does not change its character. Proposition 22 separately requires network companies to carry automobile liability insurance "to compensate third parties for injuries or losses proximately caused by the operation of an automobile by an app-based driver." Cal. Bus. & Prof. Code § 7455(f)(1). The occupational-accident coverage is a benefit the driver holds by contract. Reading "injury for which another party is liable" to cover any insurer that owes the beneficiary a contractual medical benefit would erase the line between "third party liability" and "other coverage" that *Palumbo* found in the statutory scheme. 149 Cal. App. 3d at 1031–32. DHCS concedes in its reply that the AME Benefit is a "contractual entitlement" governed by § 14024.[25]

The lien theory fails for an independent reason. The "first lien" in § 14124.74(a) is allowed "against the amount of the settlement, judgment, or award" in a beneficiary's "tort action or claim." Cal. Welf. & Inst. Code §§ 14124.70(d), 14124.74(a). There is none. Homeland interpleaded a first-party benefit, and Mr. Centeno Beltran has disclaimed any recovery from it. DHCS's argument is expressly conditional ("[i]f Mr. Centeno Beltran receives a settlement, judgment, or other award"), and the condition has not occurred.[26] Section 14124.74(a) gives DHCS no priority over CCSF or UnitedHealthcare.

### 1.2 Section 14024 Measures Recovery by Homeland's Obligation Under the Policy

#### 1.2.1 The measure of recovery

Section 14024 applies. CCSF concedes it, and UnitedHealthcare agrees that it governs

[24] Homeland Policy, Ex. 1 to Galán Decl. – ECF No. 94-2 at 3, 10, 14 (DHCS-000049, -000056, -000060).

[25] Reply – ECF No. 103 at 7–8.

[26] Mot. – ECF No. 94 at 26–27; Winter Decl. – ECF No. 90 at 2 (¶ 3).



United States District Court
Northern District of California

United States District Court
Northern District of California

recovery from a party that owes a contractual entitlement.[27] But every operative phrase in the section ties DHCS's recovery to the obligor's obligation for the particular services Medi-Cal paid for. The beneficiary must have the entitlement "at the time the service is provided." The recovery is "the amount which would have been paid" for those services, or "the value of the service actually provided, if the person entitled thereto was entitled to services." Cal. Welf. & Inst. Code § 14024. *Palumbo* read the section the same way: it reaches a "preexisting entitlement" and asks what the other coverage would have paid. 149 Cal. App. 3d at 1032. Federal law imposes the same limit: the state recovers "to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(B); *Gallardo*, 596 U.S. at 425.

The question under § 14024 is therefore what Homeland would have paid, under the policy, for the services that Medi-Cal paid for. The policy answers that question by its terms: usual and customary charges for medically necessary covered services received within 104 weeks of the accident, up to $1 million for the accident, and not otherwise excluded. Services outside those terms are services for which Homeland "would have paid" nothing, and DHCS has no § 14024 claim for them.

DHCS's principal response is that Homeland conceded liability for the full $1 million by depositing it.[28] That misreads interpleader. A stakeholder's deposit concedes that it owes the fund to someone and disclaims any interest of its own. It does not establish that any particular claimant's services were covered. Deciding that is the point of the second stage. *Lee*, 688 F.3d at 1009. Nor does *Gallardo* help. It held that a state may recover from the portion of a tort settlement allocated to future medical expenses. 596 U.S. at 425–30. It did not hold that a state may recover from a third party for services the third party never owed.

DHCS has not carried its burden as to any amount. It seeks every dollar Medi-Cal paid from the accident "until now," without allocating by date of service or showing that any service fell

---

[27] CCSF Opp'n – ECF No. 98 at 8, 11; UnitedHealthcare Opp'n – ECF No. 101 at 9, 14.

[28] Reply – ECF No. 103 at 10–11.

within the policy.[29] On its own reply calculation, only about $149,923.86 was paid for care within the 104-week period, so roughly $489,000 of its claim is for care that the policy, by its terms, does not cover.[30] And the record shows that charges for covered services consumed the $1 million limit long before DHCS made all but a small fraction of even the in-period payments. CCSF incurred more than $1 million in unreimbursed charges between November 1, 2023, and February 10, 2024, and $3.4 million by September 4, 2024. UnitedHealthcare contends the limit was consumed even earlier, by the hospital's charges during the months UnitedHealthcare was paying.[31] The policy's limit is "the maximum benefits payable" for services "received" due to the injury, and Homeland pays the provider that furnished the service.[32] An insurer with covered claims exceeding its per-accident limit pays them as presented until the limit is reached, and services received after that point generate no further obligation. DHCS offers no evidence that any benefit remained available under the policy when it paid for the services it now seeks to recover. Its only answer to the sequence of the claims is that § 14024 entitles it to be paid first regardless of when the services were received. The court addresses that argument in Section 1.2.3. On this record, DHCS has not shown that Homeland would have paid anything for the services Medi-Cal covered, and the motion fails for that reason.[33]

**1.2.2 DHCS's evidentiary objection**

DHCS objects to the Levin-Gesundheit declaration as hearsay and for lack of foundation because counsel compiled a spreadsheet from the parties' productions and did not file it.[34] The

[29] Mot. – ECF No. 94 at 10, 17–18 & n.3; Smith Decl. – ECF No. 94-3 at 5 (¶ 18).

[30] Reply – ECF No. 103 at 13 & n.3.

[31] Levin-Gesundheit Decl. – ECF No. 99 at 2–3 (¶ 4(a)–(b)); UnitedHealthcare Opp'n – ECF No. 101 at 18.

[32] Homeland Policy, Ex. 1 to Galán Decl. – ECF No. 94-2 at 11, 16 (DHCS-000057, -000062).

[33] CCSF concedes that DHCS may recover the $486.14 that Medi-Cal paid between November 1, 2023, and February 10, 2024, on CCSF's account of when the AME Benefit became available. CCSF Opp'n – ECF No. 98 at 5, 12. UnitedHealthcare does not concede it: on its account, the limit was consumed before November 2023. UnitedHealthcare Opp'n – ECF No. 101 at 18. The court does not resolve that disagreement, which is between CCSF and UnitedHealthcare and is not briefed, and it does not award DHCS any sum on this motion.

[34] Reply – ECF No. 103 at 11.

objection is overruled. At summary judgment, the question is whether the content could be presented in admissible form at trial. Fed. R. Civ. P. 56(c)(2); *Fraser*, 342 F.3d at 1036–37. The content is the parties' own billing and payment records, including DHCS's, kept in the ordinary course and producible at trial, and a summary of voluminous records is admissible. Fed. R. Evid. 803(6), 1006. Counsel offered to produce the spreadsheet to any party or the court.[35] DHCS does not contend that any figure is wrong, and its own reply calculation for payments within the benefit period ($149,923.86 through February 20, 2025) tracks CCSF's ($143,305.01 through February 17, 2025). And DHCS bears the burden on its motion. Disregarding the declaration would leave it with no evidence at all of what Homeland would have paid for the services it covered.

**1.2.3 The "prior right" clause**

DHCS's priority argument rests on the second paragraph of § 14024, which makes a provider's right to "recover remaining unpaid charges" from a third party "subject to the director's prior right to recover upon any contractual or legal entitlement or other third-party liability for the cost incurred in rendering care." DHCS reads this as a general rule that Medi-Cal is paid first from any contractual entitlement before any provider. CCSF and UnitedHealthcare read it as a balance-billing rule: when Medi-Cal has paid a provider for a service and other coverage exists for that service, DHCS recovers what it paid before the provider collects the balance.[36]

The narrower reading is the better one, and it is dispositive here. One starts with the text. The provider's right is to "remaining unpaid charges": charges that remain after a payment, which in this context is Medi-Cal's payment. The provider "shall remain entitled" to recover them, language that preserves a right the provider would otherwise lose by accepting Medi-Cal's payment. The director's "prior right" is to recover "the cost incurred in rendering care," meaning the cost Medi-Cal bore. The clause requires the division, for a given service, between Medi-Cal's reimbursement and the provider's balance. *Palumbo* describes that interplay: when DHCS recovers more from other coverage than it paid the provider, it "must first pay the remainder to the

---

[35] Levin-Gesundheit Decl. – ECF No. 99 at 2 (¶ 4).

[36] Mot. – ECF No. 94 at 23–24; Reply – ECF No. 103 at 13–15; CCSF Opp'n – ECF No. 98 at 12–13; UnitedHealthcare Opp'n – ECF No. 101 at 15–16.

provider up to the balance of the provider's full bill" and then remit any excess. 149 Cal. App. 3d at 1028. The next sentence of the paragraph confirms this framework: a provider's claim is barred "to the extent that the claim would reduce the director's right to recover pursuant to Section 14124.78," a provision that caps the director's recovery from a beneficiary's settlement, judgment, or award.[37] Nothing in the clause addresses competing claims for different services. CCSF's claim is not for "remaining unpaid charges" after a Medi-Cal payment: Medi-Cal paid nothing for the Zuckerberg services at issue because CCSF refunded it.

The structure of the statutes supports the same conclusion. When the Legislature wanted to rank the director's recovery ahead of providers' claims against a particular source, it said so in terms: against a beneficiary's tort recovery, the director's lien is "a first lien" and providers' claims are "a second lien." Cal. Welf. & Inst. Code § 14124.74(a). The first paragraph of § 14024, which defines the director's right against other coverage, contains no comparable rule. It measures the right by what the obligor "would have paid" for the services Medi-Cal covered. The clause also operates only "[t]o the extent permitted by federal law," and federal law permits recovery "to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(B); *see Olszewski v. Scripps Health*, 30 Cal. 4th 798, 821–26 (2003) (Medi-Cal provider-lien provisions preempted to the extent they allowed recovery that federal Medicaid law prohibits). Homeland had no liability for services received after the limit was reached or the benefit period ended. Finally, DHCS's reading inverts the scheme. Medicaid is the payor of last resort because other coverage should pay first for the services it covers. The AME Benefit was available for the services CCSF rendered in late 2023 and 2024. It was not available for the services Medi-Cal paid for in 2025 and 2026 because by then, the policy owed nothing more. Medi-Cal was the payor of last resort for those services. DHCS's rule would let it displace a provider's earlier covered charges by paying for later care that the policy never covered. DHCS cites no authority for cross-service priority of that kind, and the court has found none.

Because § 14124.74(a) does not apply and § 14024 does not reorder claims to the fund, DHCS

---

[37] The parties did not cite this sentence. The court notes it because it is part of the paragraph on which DHCS relies and reads the paragraph as a whole.



United States District Court
Northern District of California

United States District Court
Northern District of California

has no statutory priority over CCSF.[38]

**1.3 The Assignment and Insurer-Reimbursement Statutes**

The assignment statutes do not change the result. An assignment transfers what the assignor had. Sections 14023(d) and 14008.6(a)(1), and 42 U.S.C. § 1396k(a)(1)(A), transfer Mr. Centeno Beltran's "rights to medical support and to payments for medical care" and "the benefits of any contractual or legal entitlement for health care." His rights under the Homeland policy are measured by the policy. He had no right to payment for services outside the benefit period or beyond the limit, so DHCS acquired none. That the assignment is "irrevocable" is beside the point. The question is what was assigned, not whether it can be taken back. For the same reason, his disclaimer of any claim to the fund neither adds to nor subtracts from DHCS's rights.

Sections 10022(b)(1) and 10024 are directed at UnitedHealthcare and establish a different kind of claim. They require an insurer that owes benefits for services Medi-Cal paid for to honor DHCS's right of recovery, and they deem the insurer's contract to provide for payment to Medi-Cal "to the extent of the benefits provided under the terms of the policy for the items provided or services rendered." Cal. Welf. & Inst. Code §§ 10022(b)(1), 10024. They give DHCS a claim against UnitedHealthcare for what UnitedHealthcare owed for services Medi-Cal paid for, which

[38] In reaching this conclusion, the court considered DHCS's reading of the "prior right" clause. The clause subordinates the provider's recovery to the director's right "to recover upon any contractual or legal entitlement," not merely upon the portion of the entitlement attributable to the services Medi-Cal paid for, and the Legislature's use of "prior right" in a section about other coverage parallels the "first lien" it created for tort recoveries in § 14124.74(a). On that reading, when a provider and DHCS both look to the same contractual entitlement, DHCS is paid first for what Medi-Cal spent. That rule does not, however, enlarge the entitlement itself. The clause operates "[t]o the extent permitted by federal law," and the first paragraph still measures DHCS's recovery by what Homeland "would have paid" for the services Medi-Cal covered. Services received after the 104-week benefit period are outside the policy under any reading. DHCS's priority, if it had one, therefore would extend only to Medi-Cal payments for covered services received on or before February 17, 2025. DHCS calculates those payments at approximately $149,923.86; CCSF's allocation yields $143,305.01, of which $13,143.84 was paid while UnitedHealthcare's coverage was in force and is the subject of DHCS's reserved claim against UnitedHealthcare. Whether the services underlying those payments were medically necessary covered services at usual and customary charges, and not excluded, DHCS argued, is not established on this record. If that were correct, the answer would be partial summary judgment for DHCS on its claim for Medi-Cal payments for covered services received on or before February 17, 2025 (including its priority over CCSF's claim to the fund under § 14024). This result would not address priority as between DHCS and UnitedHealthcare, which § 14024's provider clause does not reach (addressed in Section 1.3). This analysis notwithstanding, the court's conclusion is that the motion raises a pure legal question on facts no one disputes.

appears to be the $13,143.84 paid during UnitedHealthcare's coverage, a claim DHCS has reserved.[39] They do not place DHCS's claim to Homeland's fund ahead of UnitedHealthcare's. UnitedHealthcare also argued that *Sapiano v. Williamsburg National Insurance Co.*, 28 Cal. App. 4th 533 (1994), and *Marquez v. State Department of Health Care Services*, 240 Cal. App. 4th 87 (2015), do not confer priority, and DHCS did not respond, which concedes the point.[40]

**1.4 Equity and Public Policy**

DHCS invokes the policy of preserving Medi-Cal's resources for the larger pool of needy Californians. *Kain*, 91 Cal. App. 4th at 332. CCSF invokes the policy of sustaining county safety-net hospitals, which must care for the indigent, Cal. Welf. & Inst. Code § 17000, and which have been paid nothing for more than $3.4 million in care here.[41] The statutes strikes the balance between the two policies. The equitable concern that drove *Kain* and *Boehm* — that a beneficiary compensated from another source should not keep both the compensation and the Medi-Cal benefit — is absent: Mr. Centeno Beltran has recovered nothing and seeks nothing. *Kain*, 91 Cal. App. 4th at 332–33. Equity does not alter Homeland's liability.

**1.5 Issues Not Reached**

The court does not decide three further issues. First, DHCS argues, for the first time in reply, that the 104-week Maximum Benefit Period is unenforceable because Proposition 22 mandates medical-expense coverage "up to at least one million dollars" without a durational limit, Cal. Bus. & Prof. Code § 7455(a)(1), and should be severed under Cal. Civ. Code § 1599.[42] CCSF and UnitedHealthcare have not had the opportunity to respond, and the issue does not affect the outcome. DHCS does not challenge the $1 million limit, which is the amount Proposition 22 requires, and on either CCSF's or UnitedHealthcare's account, charges for covered services

---

[39] Reply – ECF No. 103 at 13 n.4.

[40] UnitedHealthcare Opp'n – ECF No. 101 at 17; *see Narang v. Gerber Life Ins. Co.*, No. 18-cv-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (collecting cases). DHCS's reliance on Fla. Stat. § 409.910, raised for the first time in reply, does not change the analysis: that statute, like California's, provides for Medicaid's repayment "from, and to the extent of, any third-party benefits," which presupposes benefits available for the care Medicaid paid for. Reply – ECF No. 103 at 17.

[41] Mot. – ECF No. 94 at 27–29; CCSF Opp'n – ECF No. 98 at 13 n.6.

[42] Reply – ECF No. 103 at 11–13.

exhausted that limit well before the benefit period ended. DHCS has not shown otherwise. Second, UnitedHealthcare argues that under *Texaco* DHCS cannot recover for payments made after July 25, 2025.[43] The disposition makes it unnecessary to decide whether that rule applies to a claim accrued before filing and growing after it. Third, CCSF and UnitedHealthcare disagree about when the AME Benefit first became available (November 1, 2023, when UnitedHealthcare's coverage lapsed, or February 20, 2023, because UnitedHealthcare's plan excluded services that Proposition 22 required Homeland to cover) and thus about how the fund is divided between them. That dispute is not before the court on DHCS's motion.

**2. Mr. Centeno Beltran's Motion**

Mr. Centeno Beltran, through his guardian ad litem, disclaims any claim to the interpleaded fund: he has paid none of the medical expenses at issue and "does not, and cannot, seek reimbursement for any medical expenses." He asks to be dropped under Rule 21 or, alternatively, to remain as a nominal party excused from active participation. He does not release claims unrelated to the AME Benefit, such as any claim to Temporary Total Disability benefits under the policy.[44] DHCS does not oppose the alternative relief. It opposes dismissal on the grounds that (1) Mr. Centeno Beltran, as the insured, retains a colorable interest in the fund, (2) he has a statutory duty to cooperate with DHCS's recovery efforts, (3) keeping him in the case avoids a later need to re-add him or to sue him separately on a lien, and (4) the court should decide DHCS's motion first.[45]

The court grants the motion and drops Mr. Centeno Beltran as a party. Interpleader exists to resolve adverse claims to a stake, and a party who disclaims any claim to the stake is no longer an adverse claimant. *Libby, McNeill & Libby*, 592 F.2d at 507–08. Homeland named him because he had asked it for payment. He has withdrawn that request under penalty of perjury.[46] DHCS's arguments do not require a different result. First, the "colorable" interest that justifies naming a

---

[43] UnitedHealthcare Opp'n – ECF No. 101 at 10, 17; Reply – ECF No. 103 at 17 n.5.

[44] Centeno Beltran Mot. – ECF No. 93 at 3–7; Centeno Decl. – ECF No. 93 at 10–11 (¶¶ 6–15).

[45] Dep't Resp. – ECF No. 100 at 5, 10–13.

[46] FAC – ECF No. 42 at 4 (¶ 17); Centeno Decl. – ECF No. 93 at 10 (¶ 6).

claimant, *Michelman*, 685 F.3d at 894–95, has been disclaimed, and the policy in any event pays the AME Benefit to the providers who furnished the services absent the insured's contrary direction. CCSF's claim alone is more than three times the fund, so there will be no residue for the insured. Second, the duty to cooperate with DHCS in identifying and pursuing liable third parties, 42 U.S.C. § 1396k(a)(1)(C); Cal. Welf. & Inst. Code § 14008.6(a)(3), exists by statute and does not depend on party status in this case. The guardian ad litem has confirmed under oath that Mr. Centeno Beltran will cooperate with federal and state insurance programs as required.[47] Third, the lien DHCS wishes to preserve attaches to a beneficiary's tort recovery, Cal. Welf. & Inst. Code § 14124.70(d), and there is none here. DHCS identifies no claim it would need to litigate against Mr. Centeno Beltran in this action. Fourth, the request to delay the decision is moot because the court decides the underlying motion first. The Rule 19(b) factors support the same conclusion: no party is prejudiced by Mr. Centeno Beltran's absence, and the judgment among the remaining claimants will be complete. And the terms below protect the interests of an incapacitated party as Rule 17(c) requires: Mr. Centeno Beltran gives up nothing he could realistically obtain from the fund and keeps everything else.

Thus, Mr. Centeno Beltran is dropped as a party on the following terms. His disclaimer of any claim to the interpleaded AME Benefit is binding on him in this action. The dismissal is without prejudice to any right he may have under the Homeland policy other than to the interpleaded fund, including any Temporary Total Disability benefit, and to any claim against any person responsible for his injuries. It does not affect his statutory duty to cooperate with DHCS, or DHCS's rights, if any, under Cal. Welf. & Inst. Code § 14124.70 et seq. with respect to any future recovery by him.[48]

---

[47] Centeno Decl. – ECF No. 93 at 11 (¶ 15).

[48] The court considered denying the fall-back request to drop Mr. Centeno Beltran as a party and granting the alternative relief, which DHCS does not oppose. He is the insured under the policy and the person for whose care the fund exists, and although he disclaims any claim to it, the court has not yet determined the respective rights of the remaining claimants or whether the fund will be fully disbursed to them. Retaining him as a nominal party costs him nothing if he is excused from participation, and it ensures that the final judgment binds him and forecloses any later claim to the fund. That said, the court reached this order's conclusion for the reasons set forth in this order.

## CONCLUSION

The court denies DHCS's motion for summary judgment. DHCS has no right of recovery or lien under Cal. Welf. & Inst. Code § 14124.70 et seq. with respect to the interpleaded fund. Its right of recovery under § 14024 is limited to the amount Homeland would have paid under the policy for the services Medi-Cal paid for and does not give it priority over CCSF's or UnitedHealthcare's claims to the fund. The court does not determine on this motion whether DHCS may recover any amount for services received before the policy's limit was exhausted. The court overrules DHCS's evidentiary objection to the Levin-Gesundheit declaration.

The court grants Mr. Centeno Beltran's motion and drops him as a party under Rule 21 on the terms stated in Section 2 of the Analysis. The Clerk of Court must terminate Yoel Centeno, as guardian ad litem for David Alfredo Centeno Beltran, as a party. The action proceeds for the remaining defendants: DHCS, CCSF, and UnitedHealthcare.

This resolves ECF Nos. 93 and 94.

**IT IS SO ORDERED.**

Dated: November 8, 2026

LAUREL BEELER
United States Magistrate Judge